IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CR-12-D-5
No. 5:21-CV-221-D

| | |
|---|---|
| DEMETRIUS DESHAUN TONEY,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter comes before the court on referral for evidentiary hearing and memorandum and recommendation on Petitioner Demetrius Deshaun Toney's claim, pursuant to 28 U.S.C. § 2255, that his counsel failed to adequately consult with him about filing a notice of appeal after his sentencing hearing. [DE-963]; [DE-981] at 5–6; 28 U.S.C. § 636(b)(1)(B); Fed. R. Crim. P. 59(b)(1). An evidentiary hearing was held on February 23, 2022. For the reasons stated below, it is recommended Toney's claim be dismissed.

## I. PROCEDURAL HISTORY

On July 22, 2019, Toney pleaded guilty pursuant to a written plea agreement to conspiracy to participate in a pattern of racketeering in violation of 18 U.S.C. § 1962(d). [DE-652, -653]. On August 6, 2020, the court sentenced Toney to 240 months' imprisonment. [DE-930]. Toney did not appeal.

On May 12, 2021, Toney filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. [DE-963]. Toney alleged that counsel was constitutionally ineffective by (1) failing to consult with Toney about filing a notice of appeal and (2) failing to take certain actions

during the plea negotiation process and at sentencing. On July 22, 2021, the United States filed a motion to dismiss, [DE-972], and Toney opposed the motion, [DE-975].

Judge Dever dismissed all claims except the one at issue here—that counsel failed to consult with Toney about filing a notice of appeal after Toney's sentencing hearing. [DE-981] at 5–6. Toney initially alleged that counsel did not consult with him about filing a notice of appeal until after the time to file a notice of appeal had expired. [DE-963-1] at 6–14; Toney Aff. [DE-963-2] ¶¶ 19–20. Toney alleged that had counsel discussed an appeal with him, Toney would have instructed counsel to file a notice of appeal. [DE-963-1] at 6–14. Counsel stated he consulted with Toney via video conference on August 19, 2020, thirteen days after Toney's sentencing hearing. During the conversation, counsel discussed with Toney the pros and cons of an appeal, and Toney then directed counsel not to file a notice of appeal. Abrams Aff. [DE-973-1]. Counsel also stated that Toney never instructed him to file a notice of appeal. *Id.* In reply, Toney conceded he met with counsel via video conference on August 19, 2020, which was still within the fourteen-day window to file a notice of appeal. [DE-975] at 4. Toney, however, disputed what he and counsel discussed, and contended that the discussion did not constitute a constitutionally adequate consultation. *Id.* at 3. Judge Dever determined that taking Toney's allegations as true, Toney had stated a claim meriting an evidentiary hearing. [DE-981] at 5–6.

## II.     STATEMENT OF FACTS

At the February 23, 2022 evidentiary hearing testimony was received from Toney and Elliot Abrams, who represented Toney during all phases of his case. Toney introduced one exhibit, an invoice for a Juris Link meeting scheduled by Abrams with Toney on August 19, 2020 from 12:45 p.m. to 1:15 p.m., and the exhibit was admitted without objection.

### A. Toney's Testimony

Toney was represented by Abrams during his criminal case. Toney was charged with a RICO conspiracy, murder, and a drug trafficking conspiracy, and his maximum sentencing exposure was life imprisonment. Abrams worked out a plea agreement with the Government, but Toney did not believe he got good plea deal. Nevertheless, Toney entered a guilty plea pursuant to a plea agreement in July 2019, and was subsequently sentenced on August 6, 2020 to 240 months' imprisonment, which was the statutory maximum. Toney recalled being advised of the waiver of the right to appeal his sentence in the plea agreement, but did not recall being told by Judge Dever that he could still file an appeal and had fourteen days to do so. Toney also recalled being told by Judge Dever that he sentenced Toney to every day that he could, and he would have given Toney more time if possible. Toney understood that to mean if he had gone to trial and lost, his sentence would have been greater than 240 months.

Toney met with Abrams by Juris Link video on August 19, thirteen days after sentencing,[1] and the meeting lasted less than thirty minutes. Toney received no advanced notice of the Juris Link meeting with Abrams, and had no discussions prior to the meeting regarding an appeal. During the meeting, Abrams told Toney that he was eligible to appeal his sentence, Abrams did not think there was much to go off of, Abrams believed a successful appeal was unlikely, and Abrams did not think Toney should appeal based on Judge Dever's comment about giving Toney more time if he could. Toney responded, "okay," agreeing with Abrams's statements. Toney did not tell Abrams to file an appeal, and the discussion regarding an appeal ended when Toney said "okay" to Abrams's advice that Toney should not appeal. Abrams did not explain what he meant

---

[1] Toney alleged in his initial petition that counsel failed to consult with him regarding an appeal until after his appeal time had expired. [DE-963-1] at 6–14; [DE-963-2] ¶¶ 19–20. At the hearing Toney clarified that he initially believed he only had ten days to file an appeal, but later learned that the appeal time was fourteen days.

3

by "not much to go off of" or Toney being "eligible to appeal," and Toney did not ask any questions because he did not know what to ask. Abrams and Toney also discussed programs that Toney could be eligible for in prison and that Toney was uncomfortable with the sentencing process, specifically that he did not know that victim statements would be allowed.

**B. Abrams's Testimony**

Abrams is a graduate of Georgetown Law and was licensed to practice law in North Carolina in August 2011. Abrams has spent his career in criminal defense, which accounts for 95% of his practice, and roughly 90% of his cases are in federal court in this district. Abrams does not recall being previously named in a § 2255 petition.

Abrams was appointed to represent Toney in 2017, and represented him throughout the case. Toney was one of multiple defendants in the case, and he was named in three counts of a twelve count indictment. Abrams met with Toney he guessed probably eight to twelve times, but there were other lawyers at Abrams's firm who also participated in Toney's defense. Abrams generally recalled discussions with Toney regarding entering into a plea agreement versus going to trial, noting considerations such as that the RICO claim was complex and RICO is powerful tool for the Government, Toney was also facing a murder charge, Toney had a lot of time in state custody that would apply to a plea and reduce his time served, the likelihood of an acquittal at trial was very low, and co-defendants that went to trial received life sentences. Abrams viewed the process as giving Toney all the necessary information to make a decision and to get Toney home as soon as possible, and Abrams believes he accomplished those aims.

Toney ultimately pleaded guilty to the RICO conspiracy, which carried a twenty year statutory maximum sentence, and the murder and drug conspiracy charges were dismissed. Under the plea agreement the guideline range was 360 months to life, but the statutory maximum was

4

240 months. If Toney had gone to trial he would have been exposed to a life sentence, and Abrams believed Toney would have been sentenced to life if he lost at trial.

Abrams recalled that the Juris Link meeting with Toney on August 19 was within the fourteen-day appeal time and lasted slightly less than 30 minutes. He had a vague recollection that the meeting was on the thirteenth day of the fourteen-day period because of a scheduling issue either with his firm or Juris Link. During the meeting, Abrams and Toney discussed the decision of whether to appeal. Abrams made sure Toney knew he had the right to appeal, and he explained his belief that Toney had no good legal basis to appeal. Abrams did not think Toney should appeal because he could lose benefit of his plea and statutory maximum, exposing Toney to more time if we were found to have breached his plea agreement. Abrams noted that two co-defendants went to trial: one, a gang leader who he anticipated would receive a life sentence, but also a "lookout" associated with the murder who also received a life sentence. Abrams also considered that the mother of the murder victim made a statement that strongly impacted the court. Abrams asked Toney if he had any other questions, to which Toney responded "no," and Abrams asked Toney if he wanted to appeal, to which Toney responded "no."

Abrams conceded he did not discuss specific appeal issues with Toney but explained that was because he could not identify any potentially meritorious issues for appeal. Abrams reasoned that Toney received a within guideline sentence, he benefitted from the plea agreement, and if he breached the plea agreement by filing an appeal when he agreed not to do so, he could lose the benefit of his plea. The plea agreement was not conditional, and Toney did not preserve his right to appeal issues raised in multiple pretrial motions filed by Abrams that were mooted by Toney's guilty plea. Abrams did not recall discussing with Toney raising issues from the pretrial motions on appeal. Abrams did not have a specific recollection about advising Toney that the pretrial

motions would not be decided if he entered a guilty plea, but the pretrial motions were a consideration when Abrams advised Toney about whether to enter into the plea agreement. Abrams did advise Toney that entering the guilty plea would move the case forward to sentencing.

Abrams considered the entire procedural history of the case in advising Toney it was not in his best interest to appeal. Abrams ultimately considered whether Toney had a viable appeal, that Toney received a guideline sentence that Abrams believed was substantially less than what he would have received had he lost at trial, and that an appeal could potentially breach the plea agreement. However, Abrams made sure Toney knew that he could still appeal, and Abrams would have filed the appeal if so instructed.

### III. ANALYSIS

The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984)). To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's representation was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient performance, the petitioner must overcome a "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). As to the prejudice component, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697 (explaining "a court need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "to address both components of the inquiry if the defendant makes an insufficient showing on one").

The Constitution imposes upon counsel a duty to consult with the defendant about an appeal "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Counsel's duty in this regard contemplates "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. In determining whether counsel has a constitutional duty to consult, the Supreme Court provided the following guidance:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

*Id.* at 480. "If counsel has consulted with the defendant, the failure to file an appeal is deficient only if it contradicts the defendant's instruction to appeal." *Hudson v. Hunt*, 235 F.3d 892, 896 (4th Cir. 2000). Furthermore, in *United States v. Peak*, the Fourth Circuit held that if a client instructs his attorney to file an appeal and the attorney fails to do so, the attorney's actions constitute ineffective assistance notwithstanding the likelihood of success on appeal. 992 F.2d 39, 42 (4th Cir. 1993). Finally, the defendant must show prejudice, i.e., "a defendant must demonstrate

that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe*, 528 U.S. at 484.

Here, there is no dispute that Abrams advised Toney he had the right to appeal and that Toney did not direct Abrams to file an appeal. Toney contends that the Abrams's consultation with Toney regarding whether to appeal was constitutionally inadequate. The record demonstrates that Abrams had no duty to consult with Toney regarding filing an appeal and that, alternatively, his consultation was constitutionally adequate.

Toney agreed in his plea agreement to waive all rights to appeal his conviction and sentence, reserving only the right to appeal from a sentence in excess of the applicable guideline range. [DE-653]. Toney's guideline range was 360 months to life, [DE-913], but due to the statutory maximum, Toney received a 240 month sentence. The court advised Toney at sentencing that it gave him every day it could and would have given him more time if possible, and two of Toney's co-defendants who went to trial received life sentences. Abrams testified that Toney received a within guideline sentence, that Abrams believed the sentence was substantially less than what Toney would have received had he lost at trial, and that he was concerned an appeal could breach the plea agreement. Toney testified that he did not discuss filing an appeal with Abrams before the Juris Link call on August 19. Based on this record, Toney has failed to establish that Abrams even had a duty to consult with him regarding an appeal, because there is nothing in the record to support that a rational defendant would want to appeal or that Toney reasonably demonstrated to counsel that he was interested in appealing. *Roe*, 528 U.S. at 480; *see Johnson v. United States*, No. 5:16-CR-81-D-1, 2018 WL 1734920, at *13 (E.D.N.C. Mar. 14, 2018) (finding no duty to consult where petitioner received a below guideline range sentence, an appeal would have exposed petitioner to the risk of a higher sentence, petitioner showed no nonfrivolous grounds

for appeal, and petitioner pleaded guilty pursuant to a plea agreement that contained an appeal waiver), *report and recommendation adopted,* 2018 WL 1733983 (E.D.N.C. Apr. 9, 2018); *Meadows v. United States,* No. 4:12-CR-78-D-1, 2017 WL 2790698, at *9 (E.D.N.C. May 9, 2017) ("Irrespective of whether [counsel] consulted adequately, petitioner has not shown that [counsel] had a constitutionally-imposed duty to consult with him about an appeal."), *report and recommendation adopted,* 2017 WL 2799152 (E.D.N.C. June 27, 2017).

Alternatively, notwithstanding Abrams's belief that Toney should not appeal, Abrams made sure Toney knew that he could still appeal, and Toney testified that he understood he could file an appeal but did not instruct Abrams to do so. Toney testified that Abrams told him he was eligible to appeal. Although Toney stated Abrams did not explain what "eligible to appeal" meant, Toney conceded that he knew he could file an appeal. Toney also testified that Abrams advised him that there was not much to go off of, that Abrams did not believe an appeal would be successful, and that Abrams did not believe Toney should appeal based on the court's statement that it would have given Toney more time if it could have done so. Counsel's duty to consult includes "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe,* 528 U.S. at 478. Abrams clearly advised Toney of the disadvantages of taking an appeal. Abrams also testified that he did not discuss potential issues for appeal with Toney because he could not identify any such issues. Abrams consulted with Toney regarding his appeal rights and determined what Toney did not want to appeal. Abrams's performance was reasonable and satisfied his constitutional obligations in light of *Roe. See Cephus v. United States,* No. 2:11-CR-27-D, 2013 WL 6859274, at *2 (E.D.N.C. Dec. 30, 2013) (finding counsel performed reasonably and satisfied his Sixth Amendment obligations where he discussed the petitioner's appellate rights, including the advantages and

disadvantages of filing an appeal, and determined his client did not want to appeal). Accordingly, it is recommended that that claim be dismissed.

Finally, consistent with the court's directive, the undersigned has assessed the credibility of Toney at the evidentiary hearing. A person commits perjury if "having taken an oath before a competent tribunal . . . in any case in which a law of the United States authorizes an oath to be administered, that he will testify . . . truly . . . willfully and contrary to such oath states . . . any material matter which he does not believe to be true." 18 U.S.C. § 1621. Thus, the issue presented is whether or not Toney believed his testimony regarding the material events in question to be true. *See Sanderson v. United States*, No. 7:10-CR-144-D-1, 2020 WL 3979686, at *7 (E.D.N.C. June 2, 2020), *report and recommendation adopted*, 2020 WL 3979657 (E.D.N.C. July 14, 2020). Toney's testimony was largely consistent with that of his counsel, and the undersigned finds that Toney did not commit perjury at the hearing.

## IV. CONCLUSION

For the reasons stated above, it is recommended that Toney's § 2255 claim of ineffective assistance of counsel be DISMISSED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 21, 2022** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines

specified in local rules), 72.4(b), E.D.N.C.  Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review.  In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.  *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the **7** day of March, 2022.

Robert B. Jones, Jr.
United States Magistrate Judge